UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSETTE J. SCACCIA | : | |
|     Plaintiff, | : | COMPLAINT |
| | : | JURY DEMAND |
| v. | : | |
| | : | |
| | : | |
| BARBERINO CAR COUNTRY LLC | : | |
|     Defendant | : | DECEMBER 8, 2014 |

## I. INTRODUCTION

1. This is a suit brought by a consumer residing in Connecticut regarding the purchase and sale of a motor vehicle. Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, Barberino Car Country, LLC ("Barberino"), for engaging in a "yo-yo" sale of a motor vehicle, also known as a spot delivery. The illegal, unfair and deceptive actions engaged in consisted of offering financing with Barberino acting as the creditor with no valid condition subsequent or precedent regarding Barberino being able to assign the financing agreement to a third party, then, upon Plaintiff's acceptance of this offer, delivering possession of the car to the Plaintiff, attempting to take back possession of the Vehicle and effectively repossessing the Vehicle.

2. These acts violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"); the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a *et seq.* ("CUTPA"); the Uniform Commercial Code, C.G.S. §§42a-9-609, 42a-9-611, 42a-9-612, 42a-9-613, 42a-9-614, and 42a-9-615 ("UCC"); the Connecticut Retail Installment Sales Financing Act, C.G.S. §36a-785 *et seq.*

("RISFA"); and also constituted a fraudulent misrepresentation, negligent misrepresentation, and breach of contract.

## II. PARTIES

3. Plaintiff is a consumer and natural person residing in Waterbury, Connecticut.

4. Defendant, Barberino, is a Connecticut limited liability that operates a new and used automobile dealership in Watertown, Connecticut.

## III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over Barberino because it is a Connecticut company that regularly conducts business in this state.

7. Venue in this court is proper, because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

8. Barberino, as part of its regular business practice, sells vehicles to consumers who require financing.

9. Consumers who finance their purchases have two options. They can either obtain financing directly from a lender and present the loan proceeds to Barberino, who would treat the transaction in much the same fashion as a cash purchase.

10. Alternatively, consumers can finance their purchases by entering into retail installment contracts directly with Barberino.

11. Barberino generally does not retain possession of the retail installment contracts, but instead it assigns the retail installment contracts to third party banks or finance companies, who pay Barberino.

12. Barberino greatly prefers that consumers finance their purchases by entering into retail installment contracts, because it makes a considerable percentage of its profit on motor vehicle sales through participation incentives offered by the banks and finance companies, whereby Barberino is compensated by increasing the base finance rate offered by those companies. It also profits from selling consumers credit-related extras such as GAP addenda.

13. Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, Barberino will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

14. Occasionally, Barberino is unable to obtain a firm commitment to accept assignment of a vehicle at the time that a consumer is ready and willing to proceed with a financed purchase.

15. In some instances, in order to avoid losing the sale, Barberino will provide a consumer with a retail installment contract in the hope that it will subsequently assign the contract to a finance company.

16. In those instances, Barberino has a general business practice of seeking to bind the consumer to the transaction even though it does not intend to honor the retail installment contract if it is unable to assign it to a third party.

17. Plaintiff visited Barberino the evening of September 8, 2014 to shop for a car.

18. Plaintiff spoke with Joe Garcia, a salesman employed by Barberino, who acted as Barberino's agent.

19. Plaintiff told Garcia that she would have to finance any purchase of a car and that she did not have money for a down payment.

20. Plaintiff completed a credit application, and Garcia informed her that she could qualify to buy some of the used vehicles in Barberino's inventory.

21. Plaintiff selected a 2011 Toyota Camry (the "Vehicle").

22. Garcia told Plaintiff that it was important for her to complete the paperwork so that Barberino could enter it on the computer before 8:00 pm, claiming that if her credit application was accepted by the computer by the end of the day, then a live person could not reject it the following day and the approval would become final.

23. Garcia then brought Plaintiff to a finance manager, who reiterated the importance of completing the paperwork so that the deal could be entered and approved by the computer by 8:00 pm.

24. Barberino presented Plaintiff with contract documents, including a Retail Purchase Order and a Retail Installment Sales Contract for the Vehicle and the finance manager rushed her through the execution of the documents so that they could meet the putative 8:00 pm deadline.

25. These were fraudulent and deceptive statements made by Barberino in order to rush Plaintiff through the process of executing the paperwork and in order to falsely assure her that a third party had approved the transaction.

26. The Retail Installment Sales Contract provided that Plaintiff was the "Buyer" and that Barberino was the "Seller-Creditor".

27. The Retail Installment Contract further provided for an amount financed of $19,810.84 and called for Plaintiff to make 72 payments of $444.29 to the "Seller-Creditor".

4

28. The Retail Installment Contract also provided that there was a down payment of $1,000.

29. Plaintiff asked the finance manager about that, and he told her that she did not need to pay that amount but that it was necessary to include it on the paperwork in order to get her loan approved.

30. The finance manager also told Plaintiff that, if the finance company called her, she should tell it that the Vehicle had leather seats, a navigation system, and a sunroof.

31. The Vehicle did not have any of those premium options.

32. Plaintiff believes, and on that basis alleges, that Barberino informed one or more banks or finance companies that Plaintiff had made a $1,000 down payment and that the Vehicle had leather seats, a navigation system, and a sunroof.

33. Plaintiff also believes, and on that basis alleges, that Barberino made false statements regarding Plaintiff's employment and income to one or more banks or finance companies.

34. Plaintiff also believes, and on that basis alleges, that Barberino made false statements regarding the payment of a down payment to one or more banks or finance companies.

35. Barberino made false statements to third party finance companies in order to persuade them that the transaction met their underwriting criteria.

36. Barberino presented Plaintiff with a Used Vehicle Disclosure and required that she sign it.

37. One of the purposes of the Used Vehicle Disclosure is to inform purchasers of the former use of the Vehicle.

5

38. The Vehicle was previously a rental car.

39. Neither Garcia, the finance manager, nor any other employee of Barberino told Plaintiff that the Vehicle was a former rental car.

40. The box that would indicate the former rental history of the Vehicle was left unchecked on the form.

41. A very close inspection of the disclosure form might have revealed the existence of a "mark" that was considerably outside of the disclosure box for a motor vehicle but was instead placed over a pre-printed portion of the contract.

42. Plaintiff believes, and accordingly alleges, that Barberino routinely obfuscates the prior rental history of motor vehicles by furnishing severely misaligned disclosures to consumers.

43. Plaintiff did not notice this misaligned notice, because she had been rushed through the execution of the contract documents, and she purchased the Vehicle unaware of its rental history.

44. The Retail Purchase Order and Retail Installment Sales Contract also included a service contract for $2,500 and a GAP addendum for $750.

45. The Retail Purchase Order and Retail Installment Sales Contract also included a fee of $499 for Barberino to process the paperwork necessary to convey title to the Vehicle.

46. The Retail Purchase Order and Retail Installment Contract also included a charge of $180 for registration and title.

47. The Truth in Lending Disclosures on the Retail Installment Sales Contract were not marked as estimates.

48. After Plaintiff signed the contract documents, including the Retail Purchase Order and the Retail Installment Sales Contract, the finance manager told her that she could take delivery of the Vehicle the next day, September 9.

49. Barberino did not transfer title of the Vehicle to Plaintiff after she signed the purchase order, even though such transfer is required to be made at the time of sale pursuant to Conn. Gen. Stat. § 14-62(d).

50. Plaintiff was not able to come in to pick up the Vehicle until September 12.

51. When she arrived at Barberino on September 12, Garcia told her that her license plates had not come in and that she would have to take delivery of the vehicle on dealer plates.

52. This was a deceptive statement, because Barberino had not filed with the Connecticut Department of Motor Vehicles to register the Vehicle.

53. In reality, Barberino did not transfer title or register the Vehicle because it was still attempting to assign the Retail Installment Sales Contract to a third party, and it did not want to be bound by the transaction until such assignment could be made.

54. Barberino delivered the Vehicle to Plaintiff by releasing it to her with dealer plates and furnishing her with a Temporary Loan of Motor Vehicle Agreement, which indicated that the registration of the vehicle was pending.

55. Barberino was unable to assign the Retail Installment Sales Contract to a third party and, on September 17, David Richards, a manager employed by Barberino, called Plaintiff and told her that the financing of the Vehicle fell through and that she had to bring the Vehicle back by September 20.

56. Garcia called Plaintiff on September 20 and asked her to return the Vehicle.

57. Plaintiff was confused and uncertain of her rights, and she did not bring the Vehicle back on September 20 as demanded by Barberino.

58. On or about October 8, Barberino removed the dealer plates from the Vehicle.

59. The Vehicle had never been registered, and the title had never been assigned to Plaintiff, so she was unable to register the Vehicle and could not legally drive it.

60. Said action by Barberino constituted an effective repossession of the Vehicle.

61. Barberino also filed a complaint with the Watertown Police Department in which it claimed that the Vehicle had wrongly been retained.

## V.   CAUSES OF ACTION

### 1.   TRUTH IN LENDING ACT

62. Barberino violated TILA and Regulation Z by failing to make proper disclosures to the Plaintiff prior to the time that she became committed to the transaction and by failing to mark the annual percentage rate and other disclosures as estimates.

63. Barberino further violated TILA by its false inclusion of the down payment amount, which resulted in an excess sales tax of $60.35 that should have been included as part of the finance charge and included in the calculation of the annual percentage rate but which was instead included as part of the itemization of the amount financed.

64. Barberino is liable to Plaintiff for her actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

### 2.   EQUAL CREDIT OPPORTUNITY ACT

65. In revoking credit that had been previously granted as evidenced by the Retail Installment Sales Contract, and in demanding the Vehicle be returned and in effectively

repossessing Plaintiff's Vehicle without her consent, Barberino took adverse action against Plaintiff as defined in U.S.C. § 1691d(6) of the ECOA.

66. In violation of 15 U.S.C. § 1691d(1) and (2) of the ECOA, Barberino failed to provide Plaintiff with written notification as to the reasons for the adverse action and failed to provide her with written notification of (a) Plaintiff's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification and (b) the identity of the person or office from which such a statement may be obtained.

67. As a proximate result of Barberino's violations of the ECOA, Plaintiff suffered embarrassment, humiliation, mental distress and inconvenience, and she has been without reliable transportation.

68. The acts complained herein were done by Barberino intentionally, purposefully and/or in reckless disregard of the rights of the Plaintiff.

69. Barberino is also liable to Plaintiff for statutory punitive damages in an amount not greater than $10,000 pursuant to 15 U.S.C. § 1691e(b).

70. Barberino is also liable to Plaintiff for reasonable attorney's fees and costs of this action pursuant to 15 U.S.C. § 1691e(d).

### 3.    UCC ARTICLE 9 VIOLATIONS

71. In removing the dealer plates and refusing to register the Vehicle, Barberino committed a repossession of her Vehicle when it had no right to do so.

72. Pursuant to C.G.S. § 42a-9-625, the defendant is liable to Plaintiff for an amount equal to the credit service charge of $12,178.04 plus ten percent of the principal amount of the amount financed as shown on the Retail Installment Sales Contract, which amount equals $1,981.08 (10% x $19,81084) for a total amount of $14,159.12.

#### 4.     RETAIL INSTALLMENT SALES FINANCING ACT

73.     Barberino has committed willful violations of the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-700 *et seq.,* by its improper repossession of the Vehicle and by its violations of TILA, which provisions are incorporated into RISFA.

74.     Plaintiff is entitled to an order that she is not obligated to pay finance charges pursuant to Conn. Gen. Stat. § 36a-786.

#### 5.     BREACH OF CONTRACT

75.     Barberino has breached the Retail Installment Sales Contract by failing to register the Vehicle and by its demands that the Vehicle be returned.

76.     Plaintiff is entitled to damages for the loss of use of the Vehicle.

#### 6.     CONNECTICUT UNFAIR TRADE PRACTICES ACT

77.     The actions of Barberino in representing to Plaintiff that she had been approved for financing on the purchase of the car, then offering financing with Barberino acting as creditor with no valid condition subsequent or precedent regarding the defendant being able to assign the financing agreement to a third party, then, upon Plaintiff's acceptance of this offer, delivering possession of the Vehicle to Plaintiff without having registered it to her, and its other conduct, as previously alleged, constituted unfair and deceptive acts in violation of the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a *et seq*.

78.     Barberino has further violated CUTPA by its failure to disclose the rental history of the Vehicle on the Disclosure Form, by its violation of Connecticut state laws regarding the sale of motor vehicles, and by asserting false credit information to third parties in Plaintiff's name.

79. The actions of Barberino, as described above, have caused Plaintiff ascertainable loss and damages in that she has lost the use and full value of the Vehicle and she has paid more for the Vehicle than its true value and worth.

80. Plaintiff has also suffered emotional distress, aggravation, and embarrassment because of Barberino's actions.

81. Plaintiff also seeks injunctive relief in the form of an order compelling the transfer of title for the Vehicle to Plaintiff.

## 7.     NEGLIGENT MISREPRESENTATION

82. The actions of Barberino, acting through its duly authorized employees for whose actions it is liable, in representing to Plaintiff that she had been approved for financing on the purchase of the Vehicle, and then offering financing with Barberino acting as the creditor with no condition subsequent or precedent regarding Barberino being able to assign the financing agreement to a third party, then, upon Plaintiff's acceptance of this offer, delivering possession of the Vehicle to Plaintiff, and thereafter effectively repossessing the Vehicle when the third party refused to purchase the Retail Installment Sales Contract from Barberino, constituted a negligent misrepresentation in that the defendant's agents and employees, while acting within the scope of their authority as agents and employees for Barberino, failed to exercise reasonable care or competence in obtaining or communicating proper information regarding the financing of Plaintiff's Vehicle and thereby supplied false information for the guidance of Plaintiff in purchasing the Vehicle, and cause Plaintiff, by her justifiable reliance upon this information, to suffer pecuniary loss.

83. The actions of Barberino have caused Plaintiff damages in that she has lost the use and full value of the Vehicle and was without reliable transportation.

84. Plaintiff has suffered emotional distress, aggravation, and embarrassment because of the defendant's actions.

### 8. FRAUDULENT MISREPRESENTATION

85. The actions of Barberino, acting through its duly authorized employees for whose actions it is liable, in representing to Plaintiff that she has been approved for financing on the purchase of the Vehicle, and then offering financing with Barberino acting as the creditor with no condition subsequent or precedent regarding Barberino being able to assign the financing agreement to a third party, then, upon Plaintiff's acceptance of this offer, delivering possession of the Vehicle to Plaintiff, and thereafter effectively repossessing the Vehicle when the third party refused to purchase the Retail Installment Sales Contract from Barberino, constituted a fraudulent misrepresentation in that Barberino, by its duly authorized agents and employees, made a false representation as to the financing approval of the Vehicle, which representation was made as a statement of fact, though it was untrue and known to be untrue by Barberino's agents and employees who were acting within the scope of its authority and employment when they made the representation, and they were made to induce Plaintiff to act upon them, and Plaintiff did act upon the false representations to Plaintiff's injury.

86. The actions of Barberino have caused Plaintiff damages in that she has lost the use and full value of the Vehicle.

87. Plaintiff also suffered emotional distress, aggravation, and embarrassment because of Barberino's actions.

**Wherefore, Plaintiff claims** , injunctive relief in the form of an order that no finance charges are collectible under the retail installment contract; injunctive relief in the form of an order compelling the transfer of title to Plaintiff; actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); actual money damages pursuant to 15 U.S.C. §1679g(a)(1), punitive damages pursuant to 15 U.S.C. §1691e, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1679g(a)(3); pursuant to C.G.S. §42a-9-625, Barberino is liable to the Plaintiff for an amount equal to the credit service charge plus ten percent of the principal amount of the amount financed as shown on the Retail Installment Sales Contract, money damages, and a reasonable attorney's fees pursuant to C.G.S. § 42-150bb; statutory punitive damages pursuant to C.G.S. § 42-110g(a); attorney's fees pursuant to C.G.S. § 42-110g(d); common law punitive damages against Barberino; and such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against Barberino.

PLAINTIFF, JOSETTE SCACCIA

By: /s/Daniel S. Blinn
Daniel S. Blinn, ct02188
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com